THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PAUL BARGUS, Defendant-Appellant.

(No. 57750; ▮)

First District (5th Division)—March 29, 1974.

Kenneth L. Gillis, Deputy Defender, of Chicago (Steven Clark, Assistant Appellate Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (James S. Veldman and Douglas Cannon, Assistant State's Attorneys, and Ferdinand Minelli, Senior Law Student, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendant was indicted for murder, attempt murder and two counts of aggravated battery. Following a jury trial, he was found guilty on the two counts of aggravated battery (Ill. Rev. Stat. 1971, ch. 38, pars. 12—4(a), 12—4(b)(1)) and was sentenced to 3 to 9 years. He appeals contending that the State failed to prove beyond a reasonable doubt that he was not acting in self-defense or in defense of others. He also argues that his sentence is excessive.

The following evidence was adduced.

*Edward Early* testified for the State:

At approximately 3:30 A.M. on February 13, 1971, James Cohen, Patrick Moore, Reggie Harper and he entered a tavern called Reefs. At the rear is a poolroom with four pool tables and to the right as one enters the poolroom is a washroom. Shortly after entering the poolroom area he recognized Tom Martinez, a person who had spoken to him in a derogatory manner the week before. They approached each other and carried on a conversation for approximately 3 to 5 minutes regarding their previous encounter. The witness said "forget it," pushed Martinez away from him and walked toward where Cohen was playing pool with

Robert West. As he was walking away, someone touched him from behind and then he was slapped in the face. He pushed the assailant away and stood near Cohen. Defendant was standing approximately 10 to 12 feet away against the wall near the washroom. A few minutes later a gun was fired and Guy Mansfield fell to the floor. The witness turned and saw defendant fire a .25 automatic pistol at him. The bullet entered his left side and lodged in his backbone. He was hospitalized for a total of 27 days as a result of the wound. Defendant and several other patrons ran out the front door. The witness denied that he owned a knife, that he threatened anyone or that he heard defendant warn him prior to the shooting.

*Patrick Moore,* for the State:

He is an acquaintance of Early, Cohen and Reggie Harper. On the date in question, he was shooting pool when he saw Early and another man fighting. Early had pushed the fellow against the wall, but no punches were exchanged and no one fell to the floor. A second man came behind Early and Early knocked him down. Without saying anything, defendant fired two shots; the first hit Mansfield who was leaving the washroom and the second hit Early. Neither Early nor Mansfield had a weapon and neither man threatened defendant. In a line-up at the police station, the witness identified defendant as the man who did the shooting.

*Reggie Harper,* for the State:

He was with Early at Reefs on February 13, 1971. Early recognized one of the customers and after a brief argument a fight ensued and the man fell against the wall. Early was punching him, but he had not fallen to the ground when another person came behind Early. Early struck this second fellow and he fell to the floor. Defendant, who had been drinking, arose from his stool near the wall and approached the pool table. He fired two shots without a warning; the first struck a man leaving the washroom and the second struck Early. The witness identified defendant at a police line-up as the man who did the shooting.

*James Cohen,* for the State:

On the date in question, he went to Reefs with Early, Harper and Moore. While shooting pool with West, he heard a rumble and saw Early fighting with someone. Another person came behind Early and Early knocked him down. Defendant walked toward the door, and without saying anything, shot Mansfield, who had just stepped out of the washroom, and then shot Early. Early did not have a knife.

*John Martinez* testified for the defense:

He, William Villalone, John Bargus, Richard Rivera and defendant ar-

rived at Reefs at approximately 4:30 A.M. on the date in question. While eating a sandwich and watching John, Willie and defendant play pool, he was approached by Early who accused him of cursing and slapping Early a few weeks ago in Reefs. Although he denied the accusations, Early began jabbing him with the knife. When Villalone sought to intervene, Early threatened him. Early then put the knife in his back pocket and began punching him all over the face and head. Early continued kicking him when he fell to the floor. Early also struck Villalone when he told him to "lay off." The crowd of 20 or 30 people were screaming "Kill, beat him to death." Defendant got off his stool and warned Early more than once to "lay off of him, that is enough; he has had enough." Early turned and walked to within three feet of defendant and was reaching into his back pocket when defendant shot him. A second man jumped defendant and he shot that man also. The witness did not require medical attention although he missed a day of work.

*William Villalone,* for the defense:

He substantially corroborated Martinez's testimony. He also testified that Martinez was not bleeding from the fight. Early did not strike defendant although he was advancing toward defendant when the shot was fired. Mansfield did not strike or threaten defendant.

*John Bargus,* for the defense:

In addition to substantially corroborating the testimony of the other defense witness, he testified that the defendant warned both Mansfield and Early before he shot them.

*Defendant,* on his own behalf, testified:

He was afraid when Early began poking a knife at Martinez. The remainder of his testimony was substantially similar to that of previous defense witnesses.

*Robert West* testified for the defense:

He is a C.T.A. bus driver. He was playing pool with Cohen at 4 A.M. on the date in question when Early and three other "guys" entered the tavern. Early and another fellow had knives and were swinging them around. After 4:30 A.M. Early walked over to where a stocky fellow was sitting on a stool, put a knife up to his throat and said he was going to kill him. Early then placed the knife in his back pocket and began beating and kicking him until the fellow fell to the ground. Another man tried to get Early to stop, but Early knocked him down. Defendant then warned Early but he continued beating Martinez until defendant shot him. Defendant never moved toward Early nor Early toward defendant. Mansfield was shot a moment later when he grabbed defendant's arm.

OPINION

■■ A person is "justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, * * *." (Ill. Rev. Stat. 1971, ch. 38, 7—1.) It is the province of the jury to weigh conflicting evidence and determine from the facts and circumstances whether a justifiable use of force has been exercised by defendant in his self-defense or defense of others. (See *People v. Carter*, 3 Ill.App.3d 121, 278 N.E.2d 209.) A reviewing court will not substitute its judgment for that of the jury unless the evidence is so unsatisfactory as to raise a reasonable doubt of defendant's guilt. (*People v. Zuniga*, 53 Ill.2d 550, 293 N.E.2d 595.) Here, there was sufficient evidence for the jury to find that defendant's conduct in using the gun was not justifiable in defense of himself or Martinez. There is conflicting testimony whether the danger to defendant warranted the use of a gun. According to the one "neutral witness," West, defendant had not been attacked or threatened. There is also conflicting evidence on whether Martinez was in danger of imminent death or great bodily harm. It is undisputed, however, that he was not bleeding from the beating and his condition was not such that he required medical care. We conclude that the evidence is not so unsatisfactory as to leave a reasonable doubt of defendant's guilt.

■■ The sentence imposed for this Class 3 felony is also proper under the Illinois Unified Code of Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(c).) The power to reduce sentences imposed by trial courts must be applied with considerable caution and circumspection because the trial judge ordinarily has a superior opportunity in the course of the trial and the hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed than do the appellate tribunals. We believe that to be the case here and hold that the sentence is not excessive. *People v. Taylor*, 33 Ill.2d 417, 211 N.E.2d 673.

Accordingly, the judgment is affirmed.

Affirmed.

SULLIVAN, P. J., and DRUCKER, J., concur.