THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ISAAC ADAMS, Defendant-Appellant.

(No. 55653;

First District—October 12, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Suzanne M. Kohut and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and James Karahalios, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant was indicted for murder, aggravated battery, attempt robbery and for one count of felony-murder. The latter count charged that while attempting to commit a forcible felony, armed robbery, defendant shot and killed the deceased. (Ill. Rev. Stat. 1969, ch. 38, par. 9—1(a-3).) Prior to trial, the court, at the request of the State, dismissed the attempt robbery charges. After the introduction of evidence and just before closing arguments to the jury, the State nolle prossed the felony-murder charge. The jury found defendant guilty of murder and aggravated battery, and the court sentenced him to 75 to 100 years for murder, and 5 to 10 years for aggravated battery, the sentences to run concurrently. On appeal, defendant contends he was not proved guilty of the crimes beyond a reasonable doubt; that certain remarks of the prosecutor during closing argument denied him a fair trial; and that the sentence imposed for murder was excessive.

On June 19, 1970, the decedent was found shot to death in the front seat of his automobile. His auto had crashed into a parked car. Miss Verna White was wounded in the same incident.

Verna White testified for the State that, as she stood at a street corner in Chicago, the decedent drove up and asked if she were a prostitute. She replied affirmatively, agreed to perform an act of prostitution, and they drove to a nearby alley. As she prepared to perform an act of oral copulation, two men approached the car. She and the deceased tried to hide, but the two men came to opposite sides of the car. The man on her side opened the car door, and she recognized the defendant, although at the time she did not know his name. Defendant, holding a gun, attempted to enter the car and ordered the witness to move over. Miss White did not move, and the deceased started the car and attempted to drive away. Defendant fired at least five shots at the witness and at the deceased. Miss White was shot twice, in the thigh and in the calf. As he drove away, the deceased said that he was shot and told the witness to get out. She was unable to do so because of the speed of his car until he ran into the parked car.

Miss White ran back to the original intersection where three friends, Charles, James and Ann Hicks, were waiting for her. The Hicks' drove her back to the decedent's car, where the witness saw him slumped over the wheel, motionless and bloody. The Hicks' then took her to get medical attention for her injuries. They stopped a police car, and were

directed to a nearby hospital. Miss White first told the police at the hospital that she had been shot by some "dudes" who attacked her. After the police told her that she could be in trouble unless she told the truth, the witness told them what had happened. Miss White further testified that the second statement was the truth except for one thing. She told the police that she knew the deceased before that night, but she did not. She did not tell the police that she was a prostitute.

Miss White testified that she recognized defendant as someone she had seen in the neighborhood for about a year. He also frequented the same beauty parlor as she. He had a hair process and heavy mustache. His hair was not processed at trial. She stated that she had a good opportunity to see the defendant. There was an overhead light in the alley and, after he opened the car door, the interior lights of the car were on. The witness saw defendant on the street a few hours before the assault, and he had said: "Bitch, I am going to get you." After viewing photographs, she identified defendant as her assailant and the person who had killed the deceased.

Officer Ralph Storck of the Chicago Police Department testified that after viewing over 200 photographs, the victim identified defendant as her assailant. Miss White informed the officer that defendant wore black clothes and had a scarf on his head at the time of the occurrence. At about 10:00 A.M. on June 19, 1970, Officer Storck, along with other officers, went to defendant's apartment, located a few blocks from the scene of the shooting. The police woke defendant up and arrested him, finding an automatic pistol in the mattress of the bed upon which he was sleeping. The gun was partially disassembled, but it was of the same caliber as the bullet recovered from the deceased's body. An expended casing of the same caliber was found in the alley at the scene of the shooting. After making the arrest, the police found a scarf in defendant's jacket pocket. Officer Storck further testified that Miss White described her assailant as being small, 5'4" to 5'6", 18 to 20 years, and having processed hair and a mustache. The officer noticed that at the time of the arrest defendant's hair was processed and that he had a mustache.

At trial, Miss White described the weapon held by defendant as a small, gray automatic pistol. She identified the gun recovered from defendant's mattress as the gun used by defendant in committing the crimes.

Jeannette Johnson, defendant's girl friend, testified for the defense that she was with defendant earlier on the evening in question. He was wearing green slacks, and did not have a scarf on his head.

Defendant's mother and two brothers, Michael and Myron, testified that defendant came home about 10.00 P.M., June 18, 1970. He went

to sleep at about 10:30 P.M., and was still sleeping at 7:30 A.M. the following morning. Michael Adams, 14 years old, also testified that the gun in question belonged to him, not to defendant; that the gun was in the mattress for about 60 days; and that, although defendant slept right on top of it, Michael never mentioned its presence to defendant.

We initially consider defendant's contention that he was not proved guilty of the crimes beyond a reasonable doubt. He argues that the testimony of the sole occurrence witness was not believable and had been contradicted by her earlier statement to the police.

■■ It is fundamental that a positive identification by one witness with sufficient opportunity to observe the defendant may be sufficient to sustain a conviction. (*People v. Mack*, 25 Ill.2d 416, 185 N.E.2d 154; *People v. Upshaw*, 58 Ill.App.2d 256, 207 N.E.2d 728.) The sufficiency of the identification raises a question of the credibility of the witnesses which is a matter for determination by the jury with their superior opportunity to hear the testimony of the witnesses and to observe their demeanor on the stand, and the jury's judgment will not be disturbed on review unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt. *People v. Thompson*, 128 Ill.App.2d 420, 263 N.E.2d 124.

■■ The testimony of Verna White was clear, positive, and convincing. The fact that she was a prostitute and originally had given a false statement to the police was fully presented to the jury. The jury, nevertheless, found that her testimony was credible, and we believe that such a determination was proper. Without any support from the evidence adduced at trial, defendant suggests that Miss White manufactured her testimony against defendant in order to divert suspicion from herself and from her friends, the Hicks. However, during defense counsel's closing argument, that theory was presented and obviously rejected by the jury. We cannot say that Miss White's testimony was so unsatisfactory as to create a reasonable doubt of defendant's guilt. Additionally, her testimony received corroboration from that of the police officer. The police found a gun in defendant's mattress, and the gun was of the same caliber as the bullet recovered from decedent's body.

■■ Any conflicts in testimony were for the triers of fact to resolve, and they were not obliged to believe the alibi defense presented by the defense. (*People v. Jackson*, 95 Ill.App.2d 28, 237 N.E.2d 858.) The jury heard the alibi defense testified to by defendant's mother and brothers. The jury concluded that the defense was not worthy of belief, and from an examination of the record, we cannot say that the jury's conclusion was erroneous.

Defendant also contends that he was denied a fair trial as a result of

certain remarks made by the prosecutor during closing argument. At the conclusion of all the evidence, the State nolle prossed the felony-murder charge. Just prior to closing argument, the trial judge so informed the jury and read the felony-murder charge which was being dismissed. During closing argument, the prosecutor stated that the State had dropped the felony-murder charge because of a lack of evidence that defendant was attempting to rob the victims at the time of the shootings. He pointed out, however, that from its reasonable experiences in life the jury might infer that robbery was his motive. After an objection to the remark was sustained, the prosecutor stated that he would let the jury consider what the motive was, but that the State was dropping that count because there was not enough evidence introduced at trial to support it.

■■■ While arguments and statements by the prosecutor based on the facts appearing in the proof or on legitimate inferences deducible therefrom are legitimate and proper (*People v. Ostrand*, 35 Ill.2d 520, 221 N.E.2d 499), we deem it unnecessary to determine whether the remarks of the prosecutor to the jury in the instant case were proper. It is well settled that a verdict will be disturbed only when the improper remarks constitute a material factor in the conviction, or were of such magnitude that prejudice to the defendant was their obvious result. (*People v. Fortson*, 110 Ill.App.2d 206, 249 N.E.2d 260.) The remarks complained of in the instant case were not of such a nature. From the beginning of the trial, the jury was aware of the felony-murder charge. Just prior to closing argument, the trial judge, while informing the jury that the charge had been dropped, again read that count from the indictment. The prosecutor's comments to the jury concerning defendant's possible motive in approaching the deceased's automobile could not conceivably have been prejudicial to defendant.

Defendant finally contends that the sentence of 75 to 100 years imposed for murder was excessive, and he requests that this court exercise its authority to reduce the sentence. Supreme Court Rule 615(b)(4). Ill. Rev. Stat. 1969, ch. 110A, par. 615.

■■■ At the hearing in aggravation and mitigation, it was brought out that defendant was 18 years of age. He had three previous misdemeanor convictions: for battery, theft and carrying a concealed weapon.

We are mindful that our Supreme Court has indicated that the authority to reduce sentences should be exercised by reviewing courts with considerable caution and circumspection. (*People v. Taylor*, 33 Ill.2d 417, 211 N.E.2d 673.) We also recognize the heinous nature of the crime committed. However, because of defendant's age, we believe that this is a proper case for the exercise of the authority to reduce the minimum

portion of the sentence. (See *People v. Golden,* 1 Ill.App.3d 947, 275 N.E.2d 208.) The sentence for murder is accordingly reduced to a term of 40 years to 100 years in the penitentiary.

For the reasons stated, that part of the judgment sentencing defendant for murder is modified to a term of not less than 40 years nor more than 100 years in the penitentiary, and as modified, the judgment is affirmed.

Judgment affirmed as modified.

McGLOON, P. J., and DEMPSEY, J., concur.