THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ARTHUR HOLLAND, Defendant-Appellant.

(No. 55788;

First District—December 28, 1972.

*Modified upon denial of rehearing February 8, 1973.*

Gerald W. Getty, Public Defender, of Chicago, (Elliott M. Samuels and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane, James S. Veldman, and Richard Pezzopane, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court as modified on the denial of the petition for rehearing:

Defendant was charged with armed robbery. (Ill. Rev. Stat. 1969, ch. 38, par. 18—2.) After a bench trial, he was found guilty and sentenced to five to nine years. Defendant raises five issues on appeal: (1) that the trial court erred in its summary refusal to reconsider defendant's motion to suppress evidence; (2) that the court erred in refusing to suppress an identification; (3) that the court improperly restricted defendant's examination of a witness during the hearing on the motion to suppress the identification; (4) that the court improperly considered evidence of other crimes committed by defendant; and (5) that he was not proved guilty beyond a reasonable doubt.

Certain facts are undisputed. On January 7, 1970, at approximately 5:30 P.M., Adolph Hicks' grocery store was robbed. The cash register was rifled, and a change box and Hicks' wallet were taken. Shortly thereafter, in the immediate area of the robbery, two Chicago police officers observed two men on the sidewalk attempting to conceal something. When approached, the two men fled; the officers gave chase, but the men escaped. During the chase, one of the men dropped an object which proved to be Hicks' change box. Defendant was arrested the following day; Hicks identified him as one of the robbers, and the police officers identified him as one of the men they had pursued.

Prior to trial, the trial court conducted a hearing on defendant's motion to suppress the identification testimony of Adolph Hicks. At the hearing Hicks testified that the day following the robbery, he was called to the police station to view two suspects. At the station Hicks viewed a line-up of six male Negroes of approximately the same age. He recognized and identified defendant as one of the robbers. His identification was made on the basis of defendant's fur coat, hair, face, and a small scar above his eye. Hicks stated that the police did nothing suggestive during the line-up, that he was 74 years old and wore glasses to read.

Officer Andrew Rodack testified at the hearing that after arresting defendant and John Washington he brought them to the police station and called Hicks informing him that a car was being sent to bring him to view a line-up. Defendant and Washington were placed in a line-up of six persons, but only defendant was identified by Hicks. After the testimony of Hicks and Officer Rodack, the trial judge denied defendant's motion to strike Hicks' identification testimony.

At trial, the following testimony was adduced. Hicks testified that defendant and another man entered his grocery store, located at 6358 South Champlain in Chicago. Both men produced guns, and the other man stated, "this is a stickup." Defendant, while pointing his gun, warned Hicks not to move. Defendant then removed $68 from the cash register and took a cash box full of change. Handing these items to the other man, he then forced Hicks to a back room where he took his wallet containing $80. When Hicks resisted, defendant struck him on the side of the head with his pistol. Hicks further testified that, although the back room was not lighted, the front area of his store was well lighted and the back room was thereby indirectly lighted. Hicks stated that defendant was wearing a dark fur coat, but wore neither a hat nor a mask. The robbery took between 10 to 15 minutes. On the same evening, Hicks had his change cash box returned to him by the police. Hicks identified a .25 caliber automatic as appearing to be the gun held by the other

man, while he described the gun defendant used as a .25 or .38 caliber blue steel revolver.

Officer Rodack's and Officer Jeffrey Beilke's testimony was substantially the same. As they patrolled Champlain Avenue in their unmarked squad car on January 7, they observed two men walking, one of whom was attempting to conceal an object. When the officers exited their vehicle and identified themselves, the two men split up and took flight. The officers gave chase, but the men escaped. Beilke testified that, while pursuing one of the men in a well-lighted area, the man, about 15 feet from Beilke, looked around several times.

Upon returning to their squad car, the officers received a report of the Hicks' robbery and a description of the two robbers. The men whom they had pursued corresponded to these descriptions.

The following day, while patrolling about six blocks from the robbery, the officers observed defendant and Washington. Officer Beilke recognized defendant as the man he had pursued the previous day. Although Washington corresponded to the description of one of the robbers, the officers could not positively identify him as the other individual whom they had chased. Officer Rodack stated that as the officers approached the men to make the arrests, defendant and Washington each discarded an object. A .25 automatic pistol and a .38 caliber blue steel revolver were found on the ground near the men. The .25 caliber weapon was introduced into evidence at trial; Officer Beilke stated that the other weapon was "returned to a citizen."

Defendant testified that, although he had been in the Hicks' grocery store on previous occasions, he was neither involved in the robbery, nor was he chased by the police on January 7. When he was arrested on January 8, the officers questioned him about the possession of narcotics. Regarding the line-up, defendant asserted that initially Hicks identified another man who was in the line-up after having been arrested for a traffic offense. Defendant further testified that, although he was the only person in the line-up wearing a fur coat, all the members of the line-up were black, between the ages of 22 and 30, and between 5'7" and 5'9". The police did not instruct defendant to wear the fur coat during the line-up.

Officer Rodack testified for the State in rebuttal that initially at the line-up Hicks identified Washington who was arrested with defendant as the second robber; however he was unsure of this identification. The person in the line-up who had been arrested for a traffic offense was selected, not by Hicks, but by another witness on another matter.

■■ Defendant's initial contention on appeal is that the trial court im-

properly refused to allow him to renew his motion to suppress evidence. At a preliminary hearing involving the same charge as the instant indictment, a judge heard and denied a motion to suppress the same evidence. When the cause came up for trial, defendant sought to renew his motion to suppress the physical evidence. After hearing argument, the trial judge held that the motion to suppress, having been ruled on, could not be renewed at trial and that he was bound by the determination of the judge at the preliminary hearing. The trial judge reached this conclusion because of a certain amendment to the Code of Criminal Procedure made by the legislature in 1969. Prior to 1969, section 114—12(d) of the Code (Ill. Rev. Stat. ch. 38, par. 114—12(d)), provided as follows:

> "(d) The motion [to suppress the evidence] shall be made only before a court with jurisdiction to try the offense and the motion may be renewed if the trial takes place before a judge other than the one who heard the motion."

In 1969 the portion of the above section providing for the renewal of the motion was deleted. This court subsequently implied that the statutory change dispensed with defendant's right to renew his motion to suppress the evidence at trial after its earlier denial at a preliminary hearing. (*People v. Theo*, 133 Ill.App.2d 684, 273 N.E.2d 498.) Defendant, however, maintains that certain statutory amendments to the Code of Criminal Procedure in 1967 authorized the State to relitigate at trial a motion to suppress which had been granted at a preliminary hearing, and that therefore defendant must be permitted to renew his motion at trial if his motion to suppress is denied at a preliminary hearing.

Before 1967 the Code of Criminal Procedure (Ill. Rev. Stat. ch. 38, par. 114—12(b)), provided in pertinent part as follows:

> "If the motion [to suppress evidence] is granted the property shall be restored, unless otherwise subject to lawful detention, and it shall not be admissible in evidence against the movant at any trial."

In *People ex rel. MacMillan v. Napoli*, 35 Ill.2d 80, 219 N.E.2d 489, our Supreme Court considered that section and held that the suppression of evidence at a preliminary hearing was binding upon the court in subsequent trial proceedings.

After the decision in *People ex rel. MacMillan*, the legislature amended the above section 114—12(b) of the Code by adding the following sentence:

> "except that, if the order suppressing evidence is nonfinal according to Section 109—3 of this Act, the property shall not be restored and shall not because of such order be inadmissible in evi-

dence at any proceeding other than such preliminary hearing or examination."

The legislature in 1967 also amended section 109—3 of the Code of Criminal Procedure to provide as follows:

"(e) during preliminary hearing or examination the defendant may move for an order of suppression of evidence pursuant to Section 114—11 or 114—12 of this Act or for other reasons, and may move for dismissal of the charge pursuant to Section 114—1 of this Act or for other reasons. If any such order of suppression of evidence or dismissal of the charge is allowed and issued in the course of any preliminary hearing or examination, such order of suppression or of dismissal shall be non-final, the State may not appeal therefrom, and such order of suppression or of dismissal shall not in any manner bar, affect or be determinative in any subsequent proceedings."

Defendant, citing *People v. Taylor,* 124 Ill.App.2d 268, 260 N.E.2d 347, asserts that the State pursuant to the above mentioned provisions is allowed to relitigate a motion to suppress evidence which has been allowed at a preliminary hearing. In *Taylor,* this court considered the above statutory amendments and reversed a trial judge's ruling that he was bound by the suppression of evidence allowed at a preliminary hearing.

Defendant further argues that, despite the 1969 deletion of explicit language from section 114—12(d) pertaining to the defendant's right to renew a motion to suppress at the time of trial, he still retains the right to renew the motion. He contends that if the State, as viewed in *Taylor, supra,* is allowed to compel a defendant to relitigate a motion to suppress evidence granted at a preliminary hearing, then the defendant also must must be allowed to force the State to relitigate a motion to suppress denied at a preliminary hearing.

However, defendant's interesting argument has been negated by our Supreme Court's reversal of *Taylor. (People v. Taylor,* 50 Ill.2d 136, 277 N.E.2d 878.) Citing *Napoli* approvingly, the Supreme Court held section 109—3(e) of the Code of Criminal Procedure to be unconstitutional as an impingement upon the Supreme Court's rule making power. Since the State is now bound by the ruling made at preliminary hearing, absent appeal, defendant's argument is without a basis. We hold that the trial court properly refused to permit a renewal of the motion to suppress evidence at the time of the trial.

■■ Defendant's second point on appeal is that the trial court improperly denied his motion to suppress the pre-indictment identification because he was not afforded counsel at the line-up. He argues that the Illinois

rule limiting the right to counsel at a line-up to post-indictment situations (*People v. Palmer*, 41 Ill. 2d 571, 244 N.E.2d 173), is contrary to the thrust of *United States v. Wade*, 388 U.S. 218. However, the United States Supreme Court in a decision citing *Palmer* recently held that the right to counsel at line-ups does not extend to pre-indictment situations. *Kirby v. Illinois*, 406 U.S. 682.

Defendant's third contention on appeal is that the trial court committed reversible error in restricting his examination of Adolph Hicks during the hearing on the motion to suppress Hicks' identification testimony. He urges that the trial court's refusal to allow him to inquire into any original description given by Hicks to the police precluded defendant from demonstrating the suggestiveness of the line-up procedure.

■■ Defendant bears the burden of proof in a hearing on a motion to suppress an identification. (*People v. Wright*, 42 Ill.2d 457, N.E.2d 78.) Defendant must base his challenge to the fairness of a line-up procedure on the basis of due process. (*Stovall v. Denno*, 388 U.S. 293.) And in *People v. Nelson*, 40 Ill.2d 146, 238 N.E.2d 378, the court stated at p. 150: "We believe that *Stovall* requires that a defendant so claiming must prove that 'the confrontation conducted * * * was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.' "

■■ In restricting the examination of Hicks at the hearing on the motion to suppress the identification, the trial judge ruled that the only issue was the suggestiveness of the line-up procedure and that prior descriptions given by Hicks to the police were irrelevant to that issue. We cannot agree with the trial court. One of the defense's motives in seeking a prior description was to establish that Hicks' description referred to a fur coat and that defendant wore a fur coat in the line-up. Such testimony would be clearly relevant to the issue of suggestiveness.

However, defense counsel was permitted to inquire into all aspects of the immediate line-up procedure. All of the evidence adduced at the hearing indicated that the line-up was fair. It was composed of six male Negroes, all of approximately the same age, and the police made no suggestions to Hicks before or during the line-up. Under these circumstances, even if defendant had established a prior description involving a fur coat or differing from the actual appearance of defendant, he would not have, as a matter of law, met his burden of establishing the confrontation to have been "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." The error of the trial court, therefore, was harmless.

*People v. Robinson*, 46 Ill.2d 229, 263 N.E.2d 57, cited by defendant in support of his proposition that the trial judge committed prejudicial

error in restricting his examination at the hearing on the motion to suppress the identification, is clearly distinguishable from the instant case. In that case, the trial court not only refused to permit inquiry into previous descriptions, but also forbade interrogation concerning previous observations of the defendant, suggestions made by the police at the time of identification, conversations with the police just prior to identification and a viewing of the defendant handcuffed to a chair. There the trial judge also summarily refused to allow defense counsel to make an offer of proof and threatened him with "trouble" if he persisted in his questioning.

■ ■  Defendant's fourth contention on appeal is that the trial court improperly permitted testimony that defendant had committed other crimes. The basis of this contention is Officer Beilke's testimony, given over objection, that one of the recovered guns was "returned to a citizen."

The single statement of Officer Beilke did not require a conclusion by the trial judge that defendant had acquired control of the gun by committing another crime. Although indirect evidence of the commission of other crimes may be prejudicial to defendant (*People v. Cage,* 34 Ill.2d 530, 216 N.E.2d 805), the argument that Beilke's statement that one gun was returned to a citizen charged defendant with the commission of other crimes is tenuous. In fact, in our view, the State's explanation of the absence of one gun at trial was reasonable and proper. Certainly, the officer's statement, made at this bench trial, did not constitute reversible error.

■■  Defendant finally urges that he was not proved guilty beyond a reasonable doubt. It is within the province of the trier of fact, with his superior opportunity to hear the testimony and observe the demeanor of witnesses, to judge credibility. (*People v. Hyde,* 1 Ill.App.3d 831, 275 N.E.2d 239.) And on review that determination regarding the sufficiency of an identification will not be disturbed unless the evidence is so improbable or unsatisfactory as to, as a matter of law, create a reasonable doubt of defendant's guilt. *People v. Adams,* 8 Ill.App.3d 8, 288 N.E.2d 724.

■■  In the instant case, we find no basis for upsetting the trial judge's determination. Hicks had an excellent opportunity to observe defendant closely, and Hicks's testimony received strong corroboration from that of Officer Beilke. Defendant was proved guilty beyond a reasonable doubt.

For the above reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

McGLOON, P. J., and DEMPSEY, J., concur.