THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH PIETRZYK et al., Defendants-Appellants.

First District (1st Division)   Nos. 76-1120, 76-1121, 76-1122 cons.

Opinion filed October 31, 1977.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes and John M. Kalnins, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendants, Joseph Pietrzyk, Joseph Krentkowski and Richard Perez, were each indicted for two counts of aggravated battery. They were tried jointly by a jury in the circuit court of Cook County and each was found guilty of both counts of aggravated battery and one count of battery. Each defendant was sentenced to imprisonment for from three years and four months to 10 years. The sentence imposed on defendant Perez was subsequently reduced to imprisonment for from one to three years.

On appeal, defendants contend that (1) they were not proved guilty beyond a reasonable doubt because the evidence showed that defendants acted in self-defense; (2) the trial court erred in refusing to admit into evidence on behalf of defendants two out-of-court declarations which allegedly are admissible under exceptions to the hearsay rule; (3) portions of the prosecutor's closing argument were so prejudicial as to deprive defendants of a fair trial; and (4) as to each defendant one of the two aggravated battery convictions and the battery conviction must be vacated.

The charges and the convictions arose out of the beating and stabbing of Richard Gray on October 20, 1973, at about 1:30 a.m. Gray testified that he left his job in Niles to go home at about 1 o'clock in the morning, traveling south on the Edens Expressway. He left the expressway at Diversey and California in the city of Chicago to enter a gas station to purchase gas. He did not immediately drive into the station, but rather waited in the driveway because he observed a fight taking place among five people, some of whom apparently were station attendants. After a few minutes, four men left the premises and two attendants came over to service Gray's car. Gray went into the station house to pay for his purchase with a credit card and was returning to his car when the four men returned. Gray pointed out defendants Pietrzyk, Krentkowski and Perez in court as members of the group; the fourth man was not present in court.

Gray testified that he was about to enter his car when this group approached him; Krentkowski called him a nigger, a black motherfucker and asked if he was "bad." Gray testified that he said, "No, I'm trying to get home." Krentkowski continued to call him names as the group approached Gray, who was backing away towards the gas pumps for 20 to 30 feet. Pietrzyk said, "Be cool, he might have a knife" and Perez tackled Gray. Gray stated that Krentkowski began to hit him with his fists. He saw something metallic flash in Pietrzyk's hand. He fought back "for life." The station attendants came and pulled the defendants off of Gray momentarily and Gray punched and knocked down the fourth man, who was not in court. Gray himself was then struck on the head, knocked to the ground, kicked in the side and stabbed in the back. The fourth man was still on the ground at the time Gray was stabbed. The defendants were again pointed out in court as the persons who had attacked him that night. Gray was dragged by the collar across the pavement for five or six feet and then was released as his assailants ran off.

Gray testified he had received 20 to 30 blows from the defendants' fists, stab wounds in his back and the side of his face and a cut on his forearm. The police took him to the hospital, where his wounds were closed with stitches and he was required to stay for 48 hours. Two photographs of the victim taken one week after the assault were admitted into evidence.

On cross-examination, Gray testified he never indicated to defendants that he had a gun that night. He could not say for certain what the metal object he saw in Pietrzyk's hand was and he could not see who specifically had cut him, because his face was down at the time. The attendants were able to keep defendants away from him for only a matter of seconds. On redirect, he testified that the whole encounter took five or 10 minutes in all. All four of the attackers did strike him and he knew "for

certain" that all three defendants hit him after the fourth man was knocked down.

Police officer Salvi testified that he arrived at the station after receiving a call on his radio at about 1:30 a.m. He saw Gray, who was wearing a green and white uniform, and noted his injuries. Gray had no weapon. He also saw three gas station attendants wearing blue shirts as part of their uniforms; they were not armed. The attendants were holding Perez, who did not appear to be hurt at the time. On cross-examination, the policeman stated that at the time he arrived the fight had ended.

Police officer Kunz testified that he saw Gray at his home on October 25, 1973. Gray picked three photos from a stack of 12 which Kunz had produced. Defendants Pietrzyk, Krentkowski and Perez were the persons in the photographs.

Defendant Krentkowski testified in his own behalf that he, Pietrzyk, Perez, Michael Estrada and Richard Cisnero were in Cisnero's car on the expressway when the muffler fell off. They left the expressway and went into the station in question, where the attendants put the car up on the lift. Cisnero stayed with the car, while the other four went to a tavern down the block, where they drank beer. Estrada and Pietrzyk left the tavern and Krentkowski and Perez left five or 10 minutes later. When Krentkowski arrived back at the station, he saw an attendant bleeding from his mouth. Another attendant was about to hit Estrada on the head with a tailpipe when Krentkowski and Perez stopped him; Perez was hit instead with the pipe and a fight began involving everyone present. The fight shortly broke up and the defendants walked away from the station. Defendants and Estrada went back to the station five minutes later to get the car and Cisnero and were confronted by the attendants standing in front of the door holding wrenches and pipes in their hands and beckoning the defendants to fight. Krentkowski then saw Gray pumping gas into a car. According to Krentkowski, Gray said to the attendants, "Do you need some help?" Krentkowski testified that he then called Gray a nigger and said, "You can get somebody to fight too, nigger." Gray reached his hand toward his back pocket and Krentkowski told Perez, "Watch it, he has got a gun." Perez tackled Gray and they fought until the attendants began to hit defendants and Estrada with tools. Krentkowski stated he had no weapons and saw no weapons on his friends. He denied stabbing Gray and testified he saw no one else stab Gray. He did hit Gray five or six times and was hit by Gray in return. Then Estrada started fighting with Gray. Then they all jumped into the car and drove off. Krentkowski testified he sustained bruises from the blows he received.

On cross-examination, he admitted he went to no hospital that night for treatment of his injuries and did not report the incident to the police. He testified he was six feet tall and weighed 160 pounds; Cisnero was "heavy

set"; Estrada was over six feet tall and weighed about 200 pounds; Pietrzyk was five feet seven inches tall and Perez was five feet four or five inches tall, while the biggest of the three attendants was five feet nine inches tall and 170 pounds, and other two were about the size of Perez. He and his companions that night were friends and frequently met together to drink; before the incident they had consumed a case of beer and a half-gallon of wine. He did see a knife in Estrada's possession at the station. He did call Gray a motherfucker and nigger at the station because Gray was offering to help the attendants. They did drive off leaving their friend Perez at the scene, but, he testified, they later returned, only to keep on driving when they saw five or six police cars in the station. He admitted they could have stopped and told the police what happened.

Defendant Perez then testified and corroborated Krentkowski's version of the events, including the loss of the muffler, pulling into the station, going to the tavern, the order in which they had left the tavern, the threat to Estrada, Perez being hit with the pipe by the attendant and the interference of Gray. Perez testified that he tackled Gray after Krentkowski said Gray had a gun. Perez testified that he saw no weapons in the possession of Krentkowski, Pietrzyk or Estrada, and he had none himself. He did not stab Gray or kick him and he did not see anyone else stab Gray. He saw no blood on Gray before he himself was hit on the head and lost consciousness.

Perez, on cross-examination, testified that he, Pietrzyk and Krentkowski were friends and had been drinking that night, but the drinking did not affect his memory. He was not himself treated at the hospital that night for his injuries. From the uniform Gray was wearing, he thought Gray was one of the attendants at the gas station. He never saw a weapon in Gray's hand. Cisnero got the car down from the lift by himself and never got involved in the fight. Perez did tell the police officers when he was arrested that he was attacked by the attendants. He admitted telling a policeman that a person named Bill Scott was involved in the fight, but that this statement was not true. He never saw his friends come back for him that night.

The defense called Herman Nelms, who testified that he saw Estrada at 2:40 a.m. on October 20, 1973, and at that time Estrada had blood on his boots, knuckles and mouth. Estrada was holding a pair of scissors, eight to 10 inches in length, when Nelms saw him. Nelms admitted on cross-examination that Krentkowski was a friend and that he and his wife had posted bond for Krentkowski twice during the proceedings. The defendants then rested their cases. Defendant Pietrzyk did not testify.

In rebuttal, the State called Nelms, who identified a photograph as portraying Michael Estrada. The State then recalled Gray and showed him the photograph just identified and Gray stated that the man in the

photograph was not one of the four men who had attacked him. Gray also testified that he never asked the attendants if they needed help that night.

The State proved that Krentkowski had been convicted of rape and robbery in 1967. The jury returned verdicts of guilt against each defendant for each charge presented and judgment was entered on the verdicts.

Defendants claim that they were not proved guilty of aggravated battery beyond a reasonable doubt because the evidence revealed that they acted in self-defense and that Estrada was the person who inflicted the severe wounds upon the victim. Defendants claim that they are not accountable for Estrada's acts.

The pertinent definitions are found in the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38). Section 12—4 defines aggravated battery:

> "(a) A person who, in committing a battery, intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement commits aggravated battery.
>
> (b) A person who, in committing a battery either:
>
> (1) Uses a deadly weapon;
>
>      * * * *

* * * commits aggravated battery." (Ill. Rev. Stat. 1975, ch. 38, par. 12—4). Section 7—1 defines the limits of self-defense:

> "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or at the commission of a forcible felony." (Ill. Rev. Stat. 1975, ch. 38, par. 7—1.)

The pertinent part of section 5—2(c) of the Code states that a person is legally accountable for the conduct of another when:

> "Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." Ill. Rev. Stat. 1975, ch. 38, par. 5—2(c).

■■ It cannot be disputed that the victim suffered great bodily harm as a result of the beating and stabbing. It also is undisputed that the defendants set upon Gray as he stood alone at some distance from the station attendants, knocking him down and hitting him, although they saw no weapon in his hand. The defendants argue that their testimony showed that they attacked Gray only after seeing him reach for his pocket and

that they reasonably believed he was about to produce a weapon. Gray denied having a weapon and denied reaching for his pocket. The conflict in this testimony was properly resolved by the jury; furthermore, it is not reasonable to believe that a man is about to produce a weapon and inflict great bodily harm merely on the basis of seeing that man reach for his pocket, especially where, as here, no one had seen a weapon in the man's possession prior to the movement. See *People v. Carter* (1971), 3 Ill. App. 3d 121, 124, 278 N.E.2d 209, 211.

Defendants argue that they were not armed and therefore could not have inflicted the wounds suffered by the victim. But Gray testified that he saw a flash of metal in Pietrzyk's hand during the fight. Krentkowski also testified that he saw Estrada with a knife. This conflict was properly resolved by the trier of fact.

■■ Defendants argue that Estrada was the "fourth man" on their side during the fight, that Estrada must have inflicted the knife wounds and that, therefore, they are not guilty of aggravated battery. But the evidence in rebuttal by the State indicated that Estrada was not the fourth man. The evidence linking Estrada to the offense was produced by defendants Krentkowski and Perez and Nelms, who was Krentkowski's friend. This, too, was a conflict properly resolved by the trier of fact. Moreover, even if Estrada had been present and had inflicted the stab wounds, defendants Pietrzyk, Krentkowski and Perez were accountable for his actions under the facts here presented. This is not a case with facts similar to those in *People v. Brumbeloe* (1968), 97 Ill. App. 2d 370, 240 N.E.2d 150, where the defendant had been attacked and threatened by the victim and was trying to avoid the victim before his co-defendant fatally wounded the victim. Here, the defendants and Estrada had been friends for some time and had been out drinking together that night. By their own testimony, they had already engaged in one fight on Estrada's side with the station attendants before Gray appeared on the scene. Krentkowski testified that he saw a knife in Estrada's possession and yet he and Pietrzyk drove off with Estrada, leaving Perez behind after the fight with Gray. We feel that the circumstances of the participation of the three defendants in the alleged attack by Estrada "are such as to show a common design assented to by the appellant[s]. The determination of the jury will not be set aside unless the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of the defendant[s'] guilt." *People v. Tate* (1976), 63 Ill. 2d 105, 108, 345 N.E.2d 480, 482.

■■ The court in *Tate* affirmed a conviction for murder where the defendant did not fire the shots but participated in the confrontation and fight on the side of the shooter before the shots were fired. The court quoted *People v. Hughes* (1962), 26 Ill. 2d 114, 120, 185 N.E.2d 834, 837, for the principle that "the jury could have found that defendant had

'embarked upon a course of action which was dangerous in character and could reasonably be expected to require the use of force that might result in the death of a human being.' " (63 Ill. 2d 105, 112, 345 N.E.2d 480, 484.) We find the jury here could have similarly concluded from all of the evidence presented. The defendants were proved guilty beyond a reasonable doubt.

Defendants next argue that the court erred in denying the admission into evidence of two statements allegedly spoken by Estrada. After a hearsay objection was sustained, the defense offered to prove, through the testimony of Krentkowski, that Estrada shouted, "I got that nigger" immediately upon his jumping into the get-away car. The second statement excluded as hearsay was Estrada's statement that he had just killed someone and that he thought he killed a nigger, too. This declaration was offered through the testimony of Nelms, to whom the statement allegedly had been addressed at Nelms' residence one and one-half hours after the crime. It is argued that both statements qualified as statements against penal interest and as excited utterances and therefore should have been admitted as exceptions to the hearsay exclusionary rule.

■■ Defendants cite *People v. Lettrich* (1952), 413 Ill. 172, 108 N.E.2d 488, for the principle that statements against penal interest are admissible in a criminal trial on behalf of the defense. But, as the court in *Lettrich* noted, "[t]he general rule, supported by the great weight of authority, is that extra judicial declarations of a third party, not made under oath, that he committed the crime, are purely hearsay, and even though they are declarations against interest, are inadmissible. * * * The rule is sound and should not be departed from except in cases where it is obvious that justice demands a departure." (413 Ill. 172, 178, 108 N.E.2d 488, 491-92.) *Lettrich* has been interpreted by *People v. Craven* (1973), 54 Ill. 2d 419, 429, 299 N.E.2d 1, 6, as permitting evidence of third party confessions only in very special circumstances where "sufficient threshold reliability" is shown through examination of the person to whom the declaration was made, whether it is supported by independent evidence and whether, in fact, it is clearly self-incriminating.

The excited utterance or spontaneous declaration exception to the hearsay rule is well understood. "Three factors are necessary to bring a statement within this exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence." *People v. Poland* (1961), 22 Ill. 2d 175, 181, 174 N.E.2d 804, 807.

■■■ Applying these principles to the declaration allegedly heard by Krentkowski, we find that it does not qualify as a declaration against penal interest, because taken objectively it is not self-incriminating, was

offered through the testimony of one of the defendants and is not supported by evidence from any source other than the person testifying. However, we find that (1) the fight was a sufficiently startling occurrence, (2) the statement was uttered immediately after the fight, so that there was no time to fabricate, and (3) the statement, though somewhat ambiguous in its import, was related to the circumstances of the occurrence. The statement thus qualified as an excited utterance or spontaneous declaration and should have been admitted as an exception to the hearsay exclusionary rule. However, the exclusion of the declaration was clearly harmless error here, because defendants were accountable for Estrada's conduct. Furthermore, if, as the evidence indicates, Estrada was not present at all, he obviously could not have made the statement.

■■ Considering the declaration heard by Nelms, we feel that justice does not demand a departure here from the general rule excluding third-party confessions. Nelms was admittedly defendant Krentkowski's friend. The declaration itself was not a clear confession of the particular offense here charged; in fact, on its face it appears to boast of two homicides. Thus, "the offered testimony lacked sufficient threshold reliability" and the objection to it was properly sustained. (*People v. Craven* (1973), 54 Ill. 2d 419, 429, 299 N.E.2d 1, 6.) Nor is the statement an excited utterance within the exception described in *Poland*, because there was, in our view, sufficient time for Estrada to fabricate the statement during the 1½-hour interval between the crime and the declaration. Again we note that exclusion of the statement could not have harmed defendants who were accountable for Estrada's conduct.

■■ ■ Defendants next complain that the closing argument of the prosecutor was so prejudicial as to deny them a fair trial. The first complaint is that the prosecutor called the defendants "punks" before the jury. Defendants in their brief define a punk as a petty hoodlum. We find that remark was reasonably based on the evidence and not beyond the bounds of fair comment. (*People v. Evans* (1976), 41 Ill. App. 3d 15, 21, 353 N.E.2d 264, 268.) Defendants next complain of the prosecutor's remark on rebuttal closing argument that the first time Estrada was mentioned was at trial. Defendants describe this as a prejudicial comment on the failure of defendants to call Estrada at trial. We have reviewed the transcript of all the closing arguments and conclude that the remark was invited by the argument of defense counsel which preceded it. (*People v. Kelly* (1975), 25 Ill. App. 3d 753, 757, 324 N.E.2d 82, 85.) Furthermore, under the circumstances of this trial it would have been proper for the jury to consider the fact that the defendants had not called a witness favorable to their defense. *People v. Blakes* (1976), 63 Ill. 2d 354, 359, 348 N.E.2d 170, 173-4.

■■ The last complaint pertaining to the prosecutor's argument

relates to the following hypothetical example addressed to the jury:

"For instance, if you were to tackle a man, when he is tackled you were to kick him, if you were to punch him and you were to stab him and cause him great bodily harm, you are guilty of aggravated battery and all the rest of you are because you aided and you abetted."

Defendants' principal argument is that the statement is incomplete factually and legally because it does not include all of the defense testimony and theories of nonculpability. We believe that, taken in the context of the rest of the argument, the statement did not misstate the law. The prosecutor was not required to argue the defendants' case. The jury was given the proper instructions on accountability by the court before beginning their deliberations. If it could be said that the jury was misled by the hypothetical example, that misconception was removed by the court's instructions. *People v. Hope* (1974), 22 Ill. App. 3d 721, 726, 318 N.E.2d 128, 132.

■■ The State agrees with the contention of each defendant that both counts of aggravated battery arose from the same conduct and that the battery charge was a lesser included offense in the charges of aggravated battery and that, therefore, one conviction for aggravated battery and the conviction for simple battery must be vacated as to each defendant. We also agree. *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1; *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.

As to each defendant, one conviction of aggravated battery is affirmed and the other is vacated. The conviction of battery as to each defendant is also vacated.

Affirmed in part and vacated in part.

GOLDBERG, P. J., and McGLOON, J., concur.