**People of the State of Illinois, Plaintiff-Appellee, v. Osborn Fortson, Defendant-Appellant.**

**Gen. No. 52,640.**

First District, Fourth Division.

May 14, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James D. Hennings and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Michael D. Stevenson, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

Defendant, Osborn Fortson, was charged with the crimes of rape, deviate sexual assault and armed robbery. After a jury found him guilty of all three crimes, he

was sentenced to the penitentiary for a term of 20 to 40 years for the rape, 10 to 14 years for the deviate sexual assault, and 10 to 20 years for the armed robbery, all sentences to run concurrently.

Defendant appeals, contending that he was not proved guilty beyond a reasonable doubt; that he did not receive a fair trial because of the prejudicial actions of the prosecutor; that the instruction concerning his presumption of innocence was improper; and that his sentence was excessive.

*Evidence for the State:*

Complainant testified that she left home about 6:00 a. m. on Saturday, January 14, 1967 to go to work. As she was walking toward a bus stop, a man ran across the street and asked her what time it was. She told him and continued walking. He jumped behind her, pulled out a knife, and told her to follow him. They were under a bright light, and the complainant looked up and had a close view of his face. The assailant, identified by the witness as the defendant, put the knife to her throat and demanded her money. She gave him $65 that she had in her coat pocket. Defendant then took her across the street to the top floor of a hallway and told her to be quiet. He pulled her dress up and pants down, unzipped his pants, raped her, and forced her to perform an act of oral copulation. Prior to the rape she told him she was ill and he replied "So what?" After he left, the complainant sat in the hall crying, then started running in a direction away from her home, but finally ran home to her husband, who called the police. When the police came, she told them what happened and they all went to the hallway, where the complainant found her coin purse. About an hour later, two detectives came and took her to an apartment. A lady opened the door, and the complainant saw her assailant in the apartment, lying on the couch with his shorts on.

Officer William Johnson of the Chicago Police Department testified that he interviewed the complainant in her home, and she told him that she was raped. She was ill and upset during the interview. They went to the scene of the crime, and he found a coin purse there, which he gave to the complainant.

Officer Francis J. Healy of the Chicago Police Department testified that his partner and he took the complainant to an apartment on the morning of the crime. He knocked on the door and identified himself as a police officer. The complainant identified a man in the apartment as her assailant. He was sitting on the couch in his shorts with the telephone in one hand and his penis in the other. His eyes were bloodshot and he had an odor of alcohol about him. The witness arrested him and in court identified defendant as the man arrested.

*Evidence for the Defense:*

Ray Joinar, a post office employee who had known the defendant for about five years, testified that on the evening of January 13, 1967, he and defendant bought some alcohol, sat in a hallway and drank it. They parted about 10:00 p. m. that night, when defendant went home.

Beatrice Fortson, defendant's mother, testified that she lives with defendant and her daughter. On January 13, 1967, her son came home about 10:00 p. m., ate, washed up, and went to bed about fifteen or twenty minutes later. When she got up to go to work the next morning about 5:45 a. m., she saw her son asleep in his room. Her daughter got up at 6:00 a. m. to feed her baby, and her son was still asleep when the witness left the house about 7:15 a. m.

Mary Ann Fortson, defendant's sister, testified that she lives with her baby, her brother and her mother. Defendant came home about 10:00 p. m. on the evening of January 13, 1967. He ate and went to bed about a half hour later. The next morning she got up about

6:00 a. m. to feed her baby and saw her brother sleeping. She went back to bed after her mother left for work, and saw her brother around 8:00 a. m., when he was making a phone call. About 8:45 a. m., she opened the door in response to a knock. Two men pushed their way into the apartment, and one of them brought in a lady, who identified her brother as the man who had robbed her.

Defendant testified that he lives with his mother and sister, and came home about 10:00 p. m. on January 13, 1967. He ate, washed and went to bed. He got up about 8:05 a. m. the next morning to make a phone call, and never left the apartment that night.

Officer James Hogan of the Chicago Police Department testified for the State in rebuttal that on the morning of January 14, 1967 he went with Officer Healy and the complainant to defendant's apartment. They did not push their way into the apartment.

Defendant first contends that he was not proved guilty beyond a reasonable doubt.

██ Positive identification by one witness who has ample opportunity for observation, may be sufficient to support a conviction. People v. Lamphear, 6 Ill2d 346, 128 NE2d 892 (1955). The adequacy of the identification raises a question of the credibility of the witnesses which is a matter for the determination of the jury, sitting as triers of fact with the superior opportunity not only to hear the testimony of the witnesses but to observe their demeanor while on the witness stand. People v. Jackson, 28 Ill2d 566, 192 NE2d 873 (1963) ; People v. Evans, 25 Ill2d 194, 184 NE2d 836 (1962).

In the instant case, the testimony of the complaining witness, who had ample opportunity to observe her assailant, was clear and positive. She testified that he came across the street and asked her the time. He then drew a knife, demanded and received her money, took

her across the street to a hallway on the top floor of a building at knife point, raped her and forced her to commit an act of oral copulation. She testified that as he first approached she was under a bright light and that she looked at his face closely. Moreover her testimony was corroborated by the evidence that police found her coin purse at the scene of the crime a short time after the occurrence.

■ In his brief defendant had contended that the pre-trial identification procedure was so unnecessarily suggestive and conducive to irreparable mistaken identification as to have denied him due process of law and thus to have rendered the courtroom identification inadmissible. Stovall v. Denno, 388 US 293 (1967). However at oral argument, counsel for defendant conceded that under the facts in this record it could not be shown that the procedure was so improper as to render the courtroom identification inadmissible under Stovall, but argued nevertheless, that the pre-trial confrontation was so unnecessarily suggestive as to render the in-court identification unreliable and created a doubt as to the defendant's guilt, especially in view of defendant's alibi. Since the admissibility of the courtroom identification has been conceded, the fact that the confrontation prior to arrest was not made in a lineup becomes merely a question of the weight to be given it by the jury. People v. Crenshaw, 15 Ill2d 458, 155 NE2d 599 (1959) ; People v. Boney, 28 Ill2d 505, 192 NE2d 920 (1963). As we have noted, the testimony of the complainant was clear and positive, and her opportunity to observe her assailant was excellent. The jury heard the alibi defense testified to by defendant and the several other witnesses. The jury concluded that the defense was not worthy of belief and we cannot say that such a conclusion was erroneous in view of the clear and convincing testimony of the complainant.

Defendant next contends that he did not receive a fair trial because of the prejudicial comments made by the prosecutor, citing 7 specific instances:

1) After defendant's mother had completed her testimony, counsel for defendant went outside the courtroom to bring in his next witness, the court having previously entered a rule excluding witnesses from the courtroom. At that point the assistant State's Attorney in the presence of the jury objected to defense counsel's actions, stating that the State used the bailiff to bring the witnesses into the courtroom so that there would be no question about his communication with the witnesses about anyone else's testimony. Defense counsel returned to the courtroom at this point and objected to the remarks of the prosecutor and requested a mistrial. While denying the motion for a mistrial, the trial court immediately sustained the objection of the defense and instructed the jury to disregard the comments of counsel on both sides.

We recognize the rule that extreme care is required to prevent prejudicial arguments or comments which might deprive defendant of a fair trial, and that this is especially true in sex cases. People v. Garreau, 27 Ill2d 388, 189 NE2d 287 (1963). However in People v. Berry, 18 Ill2d 453, 165 NE2d 257 (1960), while noting that the assistant State's Attorney used intemperate language and made comments which were subject to criticism, the court went on to say at page 458:

> "Where it appears that improper remarks do not constitute a material factor in the conviction, or that they are of such a minor character that prejudice to defendant is not their probable result, the verdict will not be disturbed."

Although the comments of the prosecutor regarding defense counsel's departure from the courtroom were improper and unwarranted, we believe that the prompt

214

action of the trial judge in sustaining defendant's objection and instructing the jury to disregard the comments prevented any prejudice to the defendant. It should also be noted that in his closing argument to the jury, defense counsel alluded to the prosecutor's comments about his going out of the court to get his witness. Again the trial court reminded counsel that he had instructed the jury to disregard all that was said in that regard, and he expected the jury to do so. While we reject the State's contention that counsel for defendant did anything improper in simply leaving the courtroom to bring in his next witness, thereby provoking the prosecutor's comment, we conclude that the trial judge's action in twice instructing the jury to disregard the comment prevented the assistant State's Attorney's remarks from becoming prejudicial.

Defendant points out that in People v. Garreau, supra, the Supreme Court stated that the prejudicial effect of an improper argument cannot always be erased from the jurors' minds by an admonishment of the court. But there in closing argument, the prosecutor referred to the defendant as a pervert, weasel, moron, and one who would rape a dog and every member of the jury. Moreover the court noted the jury fixed the sentence in that case.

The other cases cited by defendant, People v. Polenik, 407 Ill 337, 95 NE2d 414 (1950); People v. McGeoghegan, 325 Ill 337, 156 NE 378 (1927), reveal that the conduct and comments of the prosecutors made continually throughout the trials transcended all fundamental fairness and were clearly prejudicial.

■ 2) During closing argument the prosecutor stated that the defendant's sister "covered up" for the defendant at trial, characterized some of the testimony of both alibi witnesses as "unbelievable", and stated that it was a crime for witnesses to testify falsely. Such comments constituted nothing more than fair comment by the prosecutor on the evidence, and were not improper.

215

3) In the course of closing argument the prosecutor, after pointing out that defendant and Joinar had been drinking together the evening before the crime, stated "this is just enough equipment to give the defendant that little extra power to perform this type of act." Defendant's objection was overruled. Arguments based upon the facts in evidence or on legitimate inferences therefrom are proper. People v. Ostrand, 35 Ill2d 520, 221 NE2d 499 (1966).

4) Defense counsel in closing argument inquired as to why the State was trying to hold something from the jury since they had not called the complainant's husband as a witness. The prosecutor in his reply stated: "Are we going to put on a distraught husband in this courtroom to disrupt the proceedings?" Defendant's objection was overruled. While the comment was outside of the evidence, defendant cannot complain because his own remarks invited and provoked the retort. People v. Lewis, 25 Ill2d 442, 185 NE2d 254 (1962).

5) In the course of closing argument the prosecutor stated: "Ladies of the jury, put yourselves in the place of (the complainant)". The defendant objected; the court directed the prosecutor to direct his remarks to all of the jurors and the prosecutor stated that he would. We recognize that individual members of the jury should not be singled out by counsel, but no prejudice occurred to the defendant where the objection was made and the improper argument was immediately corrected.

6 and 7) Defendant complains about two other statements made by the prosecutor in closing argument. No objections were made to those remarks at trial, and this court will not consider those two instances.

Defendant next contends that the trial court committed reversible error in giving State's Instruction Number 1 which read as follows:

216

"The indictment in this case is not to be considered as any evidence or presumption of guilt against the defendant. It is a mere formal charge necessary to place the defendant upon trial. The defendant under the law is presumed to be innocent of the charge in the indictment, and this presumption remains throughout the trial with the defendant until you have been satisfied by the evidence in the case beyond all reasonable doubt of the guilt of the defendant. This presumption of innocence is not intended to aid any one who is in fact guilty of crime to escape, but is a humane provision of the law intended, as far as human agencies can, to prevent an innocent person from being convicted. Throughout this case the burden of proving the guilt of the defendant beyond all reasonable doubt is on the State and the law does not require the defendant to prove his innocence.

"If you are convinced from all the evidence in the case beyond all reasonable doubt that the defendant is guilty as charged in the indictment, it is your duty to find such defendant guilty. If you are not convinced from the evidence beyond all reasonable doubt of the guilt of the defendant, it is your duty to find such defendant not guilty."

Defendant contends that the qualification of the presumption of innocence as set forth in the instruction in question conveys the impression to the jury that the presumption of innocence exists only to defendants "believed" to be innocent and not to those defendants "believed" to be guilty, citing Murphy v. State, 195 So2d 847 (Miss 1967).

However the presumption of innocence instruction here questioned has been approved in a line of cases. People v. Scarbak, 245 Ill 435, 92 NE 286 (1910);

People v. Lenhardt, 340 Ill 538, 173 NE 155 (1930) ; People v. Henderson, 378 Ill 436, 38 NE2d 727 (1942). The instruction specifically recites that the presumption of the innocence of defendant remains in force throughout the trial and also that the burden of proving defendant's guilt beyond all reasonable doubt is on the State, and that the law does not require defendant to prove his innocence.

In Reynolds v. United States, 238 F2d 460 (9th Cir 1956), cited by defendant, the court held that the giving of a qualified presumption of innocence instruction constituted reversible error. But that instruction failed to state that the burden of proving defendant's guilt was on the prosecution, and that the law did not require defendant to prove his innocence.

We find that the instruction in question sets forth the law as to presumption of innocence with sufficient accuracy, under the cases cited, so as not to justify reversal of this case on that account. We assume that in the future IPI Criminal Instructions 2.02 and 2.03 will be used to cover this subject and will obviate the objections raised in this case.

Defendant finally urges that the minimum sentence of 20 years for the crime of rape is excessive, and that it should be reduced.

While reviewing courts have the power to reduce sentence, (Supreme Court Rule 615(b) (4) ; Ill Rev Stats (1967), c 110A, § 615(b) (4)), this power should be used sparingly and only in cases where it appears that some substantial prejudice to the rights of the defendant has occurred. The imposition of sentence is peculiarly within the discretion of the trial court, and unless clearly abused the court of review will not interfere. People v. Hobbs, 56 Ill App2d 93, 205 NE2d 503 (1965), People v. Valentine, 60 Ill App2d 339, 208 NE2d 595 (1965).

█ Although defendant was just 20 years of age at the time of trial with a prior record of only one misdemeanor conviction for which he served 30 days, in view of the circumstances and heinousness of the crime, we cannot say that the sentence imposed was excessive. It was well within the limits imposed by statute, and the record does not disclose that it was the result of any bias, prejudice or abuse of discretion.

Accordingly, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

DRUCKER, P. J. and ENGLISH, J., concur.