**Sumaira HERNANDEZ, Plaintiff,**

v.

**JACKSON, LEWIS, SCHNITZLER & KRUPMAN, Defendants.**

**No. 96 Civ. 8540(CLB).**

United States District Court, S.D. New York.

Feb. 25, 1998.

---

10.  15 U.S.C. § 1117(a).

11.  4 McCarthy § 30:100, at 30–167 (collecting cases).

Jonathan Lovett, Lovett & Gould, White Plains, NY, for Plaintiff.

Elise M. Bloom, Jackson, Lewis, Schnitzler & Krupman, New York City, for Defendants.

**414**

*MEMORANDUM & ORDER*

BRIEANT, District Judge.

Before this Court for decision is a motion by Defendant for summary judgment pursuant to Rule 56, Fed.R.Civ. Pro., heard and fully submitted on February 24, 1998. Plaintiff Sumaira Hernandez brought this action against her present employer Defendant Jackson Lewis (hereinafter "Jackson Lewis" or Defendant) pursuant to Title VII, 42 U.S.C. §§ 2000e *et seq.*, and Section 296 *et seq.* of the New York Human Rights Law (the "NYHRL"), alleging (1) *quid pro quo* sexual harassment; (2) hostile work environment sexual harassment; (3) unlawful retaliation; and (4) unlawful discrimination on the basis of race and national origin. For the reasons set forth below, the motion is denied.

**Background**

Plaintiff, an Hispanic female from the Dominican Republic, has been employed since 1990 in a data entry capacity by Defendant law firm in its accounting department. There are essentially two alleged wrongdoers in this case. The first is the alleged sexual harasser, Mr. Arnold Mack, an African American billing coordinator in the accounting department. Although Mr. Mack was not Plaintiff's nominal supervisor, Plaintiff contends that he enjoyed de facto supervisory authority over her. The second alleged wrongdoer is Mr. Charles Patterson, also an African American. It is undisputed that Mr. Patterson is comptroller of the accounting department at Jackson Lewis and as such is a designated supervisor of both Mr. Mack and Plaintiff.

According to Plaintiff, since 1994, Mr. Patterson has accused her unjustifiably of time abuses, and has routinely discriminated against her in favor of her African–American co-workers in distributing prized overtime work assignments. *See* Complaint ¶ 5 and ¶ 6. Plaintiff claims that Mr. Mack, who was aware of her problems with Mr. Patterson, "advised [her] that if she would enter into a sexual relationship with him he would, by reason of his long-term relationship with Patterson, obtain overtime work assignments for

her and otherwise remedy the oppressive working conditions to which Patterson was subjecting her." *Id.* at ¶ 7.

The Complaint goes on to allege a paradox: ultimately, Plaintiff acquiesced to Mr. Mack's repeated requests and "*involuntarily agreed* to provide to Mack sexual favors over the course of several months." *Id.* at ¶ 8 (emphasis added). The specifics of this "involuntary agreement" are as follows. Plaintiff testified that sometime in November of 1994 she agreed to go out with Mr. Mack after work. The two went to a Red Lobster Restaurant located in Co-op city. There, Plaintiff and Mr. Mack each consumed the traditional "two drinks"—specifically, two Long Island Iced Teas [1]—which always seem to be "recited in testimony arising out of incidents in a bar." *See Lee v. Bennett,* 927 F.Supp. 97, 99 n. 1 (S.D.N.Y.1996). Thereafter, Plaintiff and Mr. Mack proceeded to a nearby motel, where they engaged in sexual intercourse. *See* P.Dep. at 95–105 at Def.Exh. B.

Plaintiff claims that she ended her sexual relationship with Mr. Mack in "February or March" 1995, when it became apparent to her that Mr. Mack would not make the promised efforts on her behalf. *Id.* at 123 and Complaint at ¶ 8. At oral argument, Defendant contended that the sexual relationship ended in December of 1994 or January of 1995. *See* Transcript. Plaintiff claims that after she terminated her sexual relationship with Mr. Mack, he began a campaign of retaliation against her, by engaging in "intimidating behavior ... standing in front of her, calling her a bitch, staring at her, laughing at her, and making her feel threatened with regard to her job security." *See* Complaint at ¶ 12; Plaintiff Mem. at 6. Plaintiff alleges that she complained to Mr. Patterson about Mr. Mack on April 4, 1995 and that Mr. Patterson responded by inquiring whether Plaintiff had enjoyed her sexual encounters with Mr. Mack, and not to let it bother her because she might have to do it again. Plaintiff Dep. at 137–139. As may be imagined, Defendant and Mr. Patterson deny that such a conversation took place.

---

**1.** A Long Island Iced Tea comprises Gin, Rum, Triple Sec, Vodka and Tequila together with Coca–Cola and sour mix. Light brown in color it is said to put modesty and reticence to flight.

Thereafter, on April 13, 1995 Plaintiff complained to Ms. Donna Tsamis, a partner at Jackson Lewis, about the conduct of Mr. Mack and Mr. Patterson. Ms. Tsamis initiated an investigation. Jackson Lewis claims that it was not able to conclude whether Mr. Mack had acted inappropriately, as conflicting accounts were provided by Plaintiff and Mr. Mack. Def. Mem. at 11. Despite the inconclusive nature of the investigation, Jackson Lewis cautioned Mr. Mack that any "sex for favors" offers by him would be grounds for discipline, including termination, and made special arrangements to accommodate Plaintiff's request that she not have to work or talk with Mr. Mack anymore, including moving plaintiffs work location to a private cubicle outside of the accounting room. *Id.* at 11–12.

According to Mr. William A. Schlosser, the Director of Finance and Administration at Jackson Lewis, as part of the Defendant's investigation Ms. Tsamis also looked into the allegation that Mr. Patterson had asked Plaintiff whether she had enjoyed her sexual encounters with Mr. Mack. Mr. Schlosser testified that when Mr. Patterson denied this allegation, Ms. Tsamis "had [Plaintiff] into the room in the hopes that the two of them could jog each others memory and maybe there was a misunderstanding since she was emotionally distraught at the time, sobbing, and maybe she misheard Charlie [Patterson], and maybe the two of them talking through it could understand what exactly was said, which would clarify the potential misunderstanding of the verbiage." Schlosser Dep at 54–56.

Despite these attempts at "clarification," Plaintiff continued to insist that Mr. Patterson had responded to her complaints inappropriately. Ultimately, Defendant's investigation into Plaintiffs allegations about Mr. Patterson's response also proved inconclusive.

Plaintiff alleges that Mr. Patterson's persecution of and discrimination against her has continued unabated despite her complaints to Jackson Lewis management. According to Plaintiff, Mr. Patterson has (1) disciplined her unfairly for tardiness and absences, relative to her African American co-

workers; (2) denied her overtime assignments and gave her an unfairly low bonus, relative to her African American co-workers; and (3) advised her that she would not receive promotional consideration because of her "thick accent." *See* Complaint at ¶ 12.

On February 23, 1996, Plaintiff filed a Charge of Discrimination with the EEOC, and on August 27, 1996 the EEOC issued to Plaintiff a Right to Sue Letter. Plaintiff filed this action on November 14, 1996.

## Discussion

### A. Summary judgment standards

Fed.R.Civ.P. 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553. The moving party may discharge this burden by demonstrating that there is an absence of evidence to support the non-moving party's case on an issue which that party would have the burden of proof at trial. *Id.*

### B. Employer liability

An employer cannot be held liable for sexual harassment in violation of Title VII unless "it provided no reasonable avenue of complaint or knew of the harassment and did nothing about it." *Karibian v. Columbia University,* 14 F.3d 773, 780 (2d Cir.1994). Defendant argues that it took prompt action to investigate Plaintiff's allegations, and ultimately moved Plaintiff out of the accounting department, and that therefore it provided Plaintiff with "a reasonable avenue of complaint." In support of this argument, Defendant directs the Court's attention to various statements made by Plaintiff which Defendant claims reflect Plaintiff's complete satis-

faction with its investigation of and response to her complaints. According to Defendant, this evidence demonstrates that its response to Plaintiff's allegations was sufficient to insulate it from liability as a matter of law.

■ The Court disagrees. Generally, "[t]he question of whether an employer has provided a 'reasonable avenue of complaint' is a question for the jury, whose inquiry is informed by the evidence as a whole, including evidence of the motivations and actions of the employer between the time the grievance procedure is concluded and the time the employee is discharged." *Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1181 (2d Cir.1996). The Court has reviewed the statements of Plaintiff cited by Jackson Lewis and considers them ambiguous. Although at some points Plaintiff does acknowledge that she told various Jackson Lewis personnel that she was "happy" with her transfer to a cubicle outside the accounting room, *see* P.Dep. at 169–70, 382, at other times she claims that such statements were made because she "need[ed] to keep [her] job." P.Dep. at 374. Such ambiguities, together with the serious questions raised by Mr. Patterson's alleged response to Plaintiff's initial complaints and the questions over the adequacy of Jackson Lewis' response generally, raise triable issues of fact as to whether Jackson Lewis provided a reasonable avenue of complaint to Plaintiff. Accordingly, summary judgment is denied on the issue of employer liability.

This Court acknowledges that our conclusion in this respect, and specifically our analysis of the question of whether Mr. Patterson's knowledge of Plaintiff's complaints should be imputed to the employer-Defendant, is set against the background of some considerable legal uncertainty in this Circuit. As Judge Calabresi of our Court of Appeals noted recently:

> "The applicability in this circuit of the rule that the knowledge of a supervisor possessing authority over the terms of the harassee's employment will be imputed to the employer is uncertain. We may have suggested in dicta in *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708 (2d Cir.1996) ] that an employer is not neces-

sarily liable when the plaintiff informs her immediate (low-level) supervisor of the harassment, and the supervisor fails to act. *See Van Zant,* 80 F.3d at 715–16.... Given the principles of agency law set out above, the correct rule would appear to be that an employer is liable for the knowledge of the harassee's supervisor if that supervisor was empowered (that is, charged with a duty) to protect the harassee from further harm."

*Torres v. Pisano,* 116 F.3d 625, 629 n. 16 (2d Cir.1997). Notwithstanding this legal uncertainty, this Court concludes that under any applicable Title VII standard, sufficient fact questions exist on the issue of employer liability (relating to both Mr. Patterson specifically and the employer generally) as to preclude summary judgment on the present state of the record.

■ As a final matter on this issue, we note that in *Torres* Judge Calabresi also "suggested" (but declined to hold) that "[i]n terms of imputing liability to the employer, the [NYHRL] imposes a stricter standard than Title VII." 116 F.3d at 629 n. 1 (quoting *Bush v. Raymond Corp.,* 954 F.Supp. 490, 496 n. 3 (N.D.N.Y.1997)). Under the NYHRL, the plaintiff must prove that the employer "became a party to [the discrimination] by encouraging, condoning, or approving it," *Rivera v. Prudential Ins. Co.,* 1996 WL 637555 (N.D.N.Y.1996) (quoting *Totem Taxi, Inc. v. New York State Human Rights Appeal Bd.,* 65 N.Y.2d 300, 491 N.Y.S.2d 293, 295, 480 N.E.2d 1075 (1985)), while a Title VII plaintiff must show that the employer "provided no reasonable avenue of complaint or knew of the harassment and did nothing about it." *Karibian v. Columbia University,* 930 F.Supp. 134, 138 (S.D.N.Y.1996).

In this case, Defendant might have argued that even if Plaintiff has made a sufficient showing to withstand summary judgment on the issue of employer liability under Title VII, she has not done so under the NYHRL's stricter standard. However, because Defendant has declined to address the possibly stricter NYHRL standard, it has not placed

the matter in issue.[2] It may be that the distinction between the NYHRL and Title VII employer liability standards lacks practical significance. Should the proof at trial suggest otherwise, the point may be raised at the charging conference.

## C. Plaintiff's *quid pro quo* claim

Defendant claims, and the Court agrees, that if an alleged harasser possesses no authority to affect the benefits or privileges of the harassed plaintiff's employment, plaintiff cannot sustain a Title VII claim of sexual harassment under the *quid pro quo* theory. *See Carrero v. New York City Housing Authority*, 890 F.2d 569, 579 (2d Cir.1989). Although Mr. Mack is not Plaintiff's nominal supervisor, Plaintiff claims that Mr. Mack nevertheless held the power to alter the terms and conditions of her employment. In effect, Plaintiff alleges that Mr. Mack was one of her de facto supervisors. Defendant disputes this assertion, and insists that because Mr. Mack was not Plaintiffs nominal supervisor, her *quid quo pro* claim must fail as a matter of law.

This presents a triable issue. Plaintiff testified that Mr. Mack gave her work assignments to do, and "taught her how to do things." P.Dep. at 262. This claim is consistent with their relative positions within the Jackson Lewis hierarchy. Mr. Mack, a billing coordinator undoubtedly enjoys more authority than Plaintiff, a data entry employee. In addition, Ms. Karen Van Zant, also a billing coordinator at Jackson Lewis, testified that Mr. Mack was "one of the people" responsible initially for training her, and that Mr. Patterson told her to follow Mr. Mack's instructions. *See* P.Exh. 3 at 25. In view of these facts, and in light of the record as a whole, it seems to the Court that if Mr. Mack was not a de facto supervisor, he did at least enjoy some degree of supervisory authority over Plaintiff, and that such authority may well have been enhanced, as Plaintiff claims, by reason of Mr. Mack's close relationship with Mr. Patterson. Thus, there are disputed issues of fact with respect to whether Mr.

Mack enjoyed sufficient supervisory authority over Plaintiff to establish a claim for *quid pro quo* sexual harassment. Accordingly, Defendant's motion for summary judgment on plaintiff's *quid pro quo* claim is denied.

## D. Hostile work environment

Defendant's motion must also be denied with respect to plaintiff's hostile work environment claim. A hostile work environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). In addition to the plaintiff's subjective perception of an abusive environment, the challenged conduct must also rise to a level where a reasonable person would find it objectively abusive. *Harris*, 510 U.S. at 21, 114 S.Ct. at 370; *see also Karibian v. Columbia University*, 14 F.3d 773, 779 (2d Cir.1994).

From this Court's reading of the papers submitted, there is a genuine issue of fact as to whether the conduct of which plaintiff complains was sufficiently severe and pervasive to constitute an objectively hostile work environment. Plaintiff alleges that Mr. Mack repeatedly solicited sexual favors from her, and that throughout her employment in the accounting department "she was forced to endure an overall environment riddled with sexual innuendo and touching." P.Mem. at 3. According to Plaintiff, one of her co-employees, Sandra Peters would touch Mr. Mack's crotch in front of Plaintiff. The testimony of Plaintiff's co-workers tends to support her allegations in this regard, *see* Van Zant Dep. at 33–35. The testimony of William Krupman, a managing partner at Jackson Lewis, that he was aware of "horseplay" and "kidding around" in the accounting department, [*see* Krupman Dep. 27–41] confirms for the Court that there is a triable issue of fact on the question of whether Plaintiff was exposed to a hostile work envi-

**2.** The Court infers that Defendant is aware of the potential distinction between the two standards. *See Margiotta v. Engelhard Corp.*, 97 Civ. 1075; Slip Op., Doc. No. 23, at 8–9 (S.D.N.Y. Dec. 23, 1997) (partially denying summary judgment and noting possible distinction between Title VII and NYHRL employer liability standards in a case in which Jackson Lewis represented defendant).

**418**

ronment. Accordingly, Defendant's summary judgment motion with respect to Plaintiff's hostile work environment claim is denied.

### E. Plaintiff's discrimination claim

 There are also triable issues of fact with respect to Plaintiff's discrimination claim. Defendant claims that one of the adverse employment actions Plaintiff complains of, namely the lowering of her bonus, was a function of Plaintiff's tardiness and absenteeism. Plaintiff disputes this, arguing that her lower bonus reflects Mr. Patterson's discrimination, and further arguing that Mr. Patterson's remark that she would never be promoted because of her "thick accent" gives rise to an inference of unlawful discrimination based on national origin. In light of this disputed issue of fact, as well as the dispute over whether Plaintiff was disciplined disproportionately relative to her African American peers for her tardiness and absences, summary judgment must be denied on Plaintiffs discrimination claim.

### F. Retaliation claim

To state a claim of retaliation under Title VII, Plaintiff must allege that (1) she engaged in an activity protected under Title VII; (2) Defendants were aware of Plaintiff's participation in the protected activity; (3) she suffered an adverse employment action; and (4) there was a causal connection between the adverse employment action and the protected activity. *See Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1213 (2d Cir.1993). The record is unclear as to whether Jackson Lewis has retaliated against Plaintiff since her filing of her claim with the EEOC. That is not dispositive, however. While protected activity typically consists of filing a lawsuit or a formal complaint with an agency, *see Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.,* 957 F.2d 59, 65 (2d Cir.1992), it may also take the form of less formal protests, such as the complaints made to management here. *See Sumner v. United States Postal Serv.,* 899 F.2d 203, 209 (2d Cir.1990).

On this record, there are triable issues of fact on the question of whether Mr. Patterson himself, and the employer generally, re-taliated against Plaintiff after she complained to him about Mr. Mack. Accordingly, summary judgment is denied as to Plaintiff's retaliation claim.

### Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is denied.

SO ORDERED.